UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MALCOM D. COBB, JR., | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-CV-437-DRL-JEM |
| WEXFORD HEALTH SERVICES *et al.*, | |
| Defendants. | |

OPINION AND ORDER

Malcom D. Cobb, Jr., a prisoner without a lawyer, is currently housed at the Miami Correctional Facility. He filed a complaint alleging he is being denied constitutionally adequate medical treatment. ECF 1. He also filed a motion for preliminary injunctive relief. ECF 4. The court granted him leave to proceed against the Warden in an official capacity to obtain permanent injunctive relief to receive constitutionally adequate medical care for his urinary, bowel, and blood pressure issues as required by the Eighth Amendment.[1] ECF 6. The Warden was ordered to file and serve a response to the preliminary injunction (with supporting medical documentation and declarations from other staff as necessary) describing/explaining how Mr. Cobb is being provided constitutionally adequate medical treatment for the aforementioned issues. *Id*. The Warden has filed a response (ECF 17), and Mr. Cobb has filed a reply (ECF 18 & ECF 19). Thus, the motion for preliminary injunction is ripe for ruling.

---

[1] The court took all other claims under advisement for later screening as required by 28 U.S.C. § 1915A. ECF 6.

In his complaint, Mr. Cobb alleges he was discharged from the infirmary on May 22, 2023, though he is urinating blood because he has not been provided medical supplies for four weeks. He alleges his intestines and rectum do not work properly and he must manually remove his feces. He alleges he has an infection and can hardly get out of bed. He alleges he is being denied blood pressure and pain medication. He alleges he has been told by three specialists that he needs two surgeries, but neither have been scheduled. In his preliminary injunction motion, Mr. Cobb asks the court to order he be put back in the infirmary, given medication, and scheduled for surgery. ECF 4.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotations omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss

2

on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[2] On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate or providing him with additional medications—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotations omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and quotations omitted).

The details of the care Mr. Cobb has received at the Miami Correctional Facility (MCF) for his medical conditions are set forth in the Warden's response and are supported by an affidavit and medical records. ECF 17. Lee Ann Ivers, a registered nurse (RN) serving as a Health Service Administrator at MCF, attests that, per her review of Mr. Cobb's medical records, he has been seen by outside medical specialists over fifteen

---

[2] The Seventh Circuit has recognized the first step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

(15) times from December 2020 to the present. ECF 17-1 at 1–3. Those appointments included a colonoscopy and several follow-ups, a CT of his abdomen and pelvis, several appointments with a gastroenterologist, a consult with a urologist, a transurethral resection of the prostate (TURP) surgical procedure and several follow-ups, a general surgery consult which resulted in a Sitz marker study being completed at MCF,[3] and the approval of a second colorectal surgery specialist consult which was scheduled for sometime in July 2023.[4] *Id*. Of particular relevance to the instant motion, Nurse Ivers also attests that Mr. Cobb has been seen by medical staff at MCF on a near daily basis from May 6, 2023 to June, 16, 2023, the date the response was docketed, "unless he refuses, or on rare occasions, the medical staff is not able to locate him." *Id*. at 3–4; *see also* ECF 17-2 & ECF 17-3 (medical records and list of medications administered). Those assessments include administering multiple medications for his pain, urinary, blood pressure, and colorectal issues.[5] *Id*.

Mr. Cobb has filed a reply (ECF 18), along with one-hundred-sixty-one pages of exhibits including handwritten notes of his daily personal health details since 2020, describing what he ate/drank and felt like on each day. ECF 18-1. The exhibits also

---

[3] "A sitz marker study is most often used with patients who are suffering from chronic constipation, for example less than two bowel movements per week. During the test tiny 'markers' are used to see how fast food is moving through the intestines." https://www.cedars-sinai.org/programs/imaging-center/exams/x-ray-fluoroscopy/sitz-marker-study.html (last visited Aug. 2, 2023).

[4] The precise date of the appointment could not be provided at the time of the defendant's response due to security concerns. ECF 17-1 at 3.

[5] As of the nurse visit on June 15, 2023, the day before the Warden filed his response, Mr. Cobb was receiving eleven different medications. *See* EF 17-2 at 1–2.

4

include heath care documents, medical requests, grievances, and letters from 2021.[6] Mr. Cobb's reply doesn't explain how those documents are relevant to the current issue of preliminary injunctive relief.[7] More important, he doesn't directly dispute any of the medical information provided by the Warden. Instead, he argues generally that the Warden is responsible for the inmates at MCF overall but that Nurse Ivers is the one who "runs the joint" and "decides on how you live or die." ECF 18 at 2. He claims he is still urinating blood and digging stool out of his rectum. He claims Nurse Ivers reduced his pain medication to twice daily after he was moved to the restricted housing unit, but he admits that the "pain is the same nothing has changed except meds." *Id*. He also admits that he has refused medication and care at times, but he claims he did so because the nurses wrote the "wrong numbers down for my blood pressure," so "why would I let you also when you give blood pressure meds to me and 1 hr. later you want to take blood pressure it would be low so yes I refused them." *Id*. at 3.[8] Finally, as to medical supplies,

---

[6] He included a handful of documents from 2017 that appear to relate to a knee injury, which is not relevant to this case.

[7] Mr. Cobb claims he was retaliated against on June 10, 2023, and placed into a restricted housing unit after a correctional officer accused him of assault. He claims his "legal work" was confiscated, but it's unclear what documents he needs and how he was able to submit his reply and voluminous exhibits if that is accurate. ECF 18 at 1–2. In any event, claims regarding retaliation are outside of the scope of the current lawsuit.

[8] In a separate reply, Mr. Cobb claims that Nurse Ivers "lied about being one of the nurses who administers some of [his] medical care." ECF 19 at 1. He claims his personal notes show she never saw him "except to talk and yell" at him. *Id*. However, even if Mr. Cobb's assertion is credited, this doesn't create a material dispute as to whether he was given the care described above overall. Mr. Cobb also claims he was released from the infirmary on April 27, 2021, and there is "still no appointment set for outside GI or urinary specialist" since then. *Id*. However, he contradicts his own assertions later in the same document when he admits that he was taken to appointments with GI specialist Dr. Chen on September 23, 2021, and March 7, 2022, that he was taken to urologist Dr. Miller on three separate occasions in November 2021, which resulted in a TURP

Mr. Cobb alleges Nurse Ivers refused to give him supplies in the past, but he admits she has brought him supplies several times since he filed his motion for preliminary injunctive relief on May 26, 2023.

Under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). However, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Nevertheless, "mere disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and quotations omitted). Instead, the court must "defer to medical professionals' treatment decisions unless there is evidence that no

---

procedure being completed in January 2022, and that he had a follow-up visit with Dr. Miller in February 2022. *Id.* at 1–2. He further admits he saw Dr. Brumfield for a general surgery consult in late September 2022, which resulted in the Sitz marker test being performed, and that he was seen by Dr. Katz, a gastroenterologist, for a colorectal surgery consult in late November 2022. *Id.* at 2. Although he claims that Dr. Katz told him "if surgery would of (sic) happened 2 years ago when suggested they could of (sic) saved rectum," *id.*, this allegation may be relevant if he is eventually allowed to proceed on claims for monetary damages, but it's not relevant to the current issue of preliminary injunctive relief.

minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotations omitted).

Additionally, it is not enough that a medical professional be mistaken in his or her judgment, as "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). To prevail, the inmate must show deliberate indifference, which is "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722. Put another way, the plaintiff must show that a medical provider's treatment decisions were "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Based on the record before the court, Mr. Cobb has not made a clear showing that he is entitled to a preliminary injunction. At issue is whether he is *currently* receiving inadequate medical care such that he will be irreparably harmed if not granted injunctive relief while this case is pending. Although it is obvious Mr. Cobb has a variety of serious medical ailments, he hasn't adequately shown the defendants are currently failing to treat them. *See Univ. of S. Ind.*, 43 F.4th at 792 (when ruling on a motion for preliminary injunction, the court must assess the merits as "they are likely to be decided after more complete discovery and litigation"). Mr. Cobb doesn't dispute he has generally been seen by medical staff and administered medications daily since at least May 2023. To the extent any days were skipped, Mr. Cobb admits *he* refused the care, which—despite his stated rationale for doing so—doesn't suggest the defendants are being deliberately indifferent to his needs. He also admits he has been seen by multiple specialists since 2020 regarding these issues, and he doesn't dispute that an appointment with a colorectal surgeon was

7

most recently scheduled for July 2023. In fact, in a separate motion, which will be addressed below, Mr. Cobb admits he was taken to a new colorectal surgeon for a surgical consult on July 20, 2023. ECF 22 at 3-4. Although it's clear Mr. Cobb disagrees with the course of treatment he has received over the years, that isn't enough to warrant granting preliminary injunctive relief in this case. *See Walker*, 940 F.3d at 965 (inmates are "not entitled to demand specific care" and the court must generally defer to medical professionals unless evidence shows blatant incompetence); *Univ. of S. Ind.*, 43 F.4th at 791 (plaintiff cannot be given the benefit of unsupported inferences at this stage). Accordingly, because the record demonstrates Mr. Cobb is currently receiving constitutionally adequate medical care in response to the issues on which he was granted leave to proceed, the motion (ECF 4) will be denied.

Mr. Cobb also filed a second motion for preliminary injunctive relief. ECF 22. In it, he claims a sergeant refused to write a report about the fact that he was served peanut butter on June 10, 2023. When Mr. Cobb protested, the sergeant refused again, ordered him to leave the dining hall, and eventually tried to tip him out of his wheelchair. When that was unsuccessful, the sergeant called a signal because he falsely alleged Mr. Cobb had hit him. Mr. Cobb was then taken to the disciplinary segregation unit, and all of his property—including his legal work—was confiscated. Mr. Cobb alleges the disciplinary hearing board found him not guilty of the charge, but they still refused to give him his property back. These claims are beyond the scope of the current litigation, so any preliminary injunctive relief related to them will be denied. *See, e.g., Winter*, 555 U.S. at 20

8

("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits . . ..").

He also alleges that when he recently read the declaration from Nurse Ivers related to this case,[9] he became upset which caused his blood pressure to drop. He was transported to the hospital where he was stabilized and then sent back to the infirmary for observation. After several days, Nurse Ivers had him transferred to general population which "wouldn't be that bad" (ECF 22 at 2) except for the fact that he claims he was denied his condom catheters, wipes, and urine pads and was given adult diapers and extra wash cloths instead. However, in a healthcare request form attached to a separate reply, Mr. Cobb appears to dispute his own allegations when he admits that after he was "thrown to population" and had to "fight" for supplies, he was brought his medication and requested supplies on June 25, 2023. *See* ECF 19-1 at 3. Thus, these allegations don't warrant preliminary injunctive relief. *See e.g., Univ. of S. Ind.*, 43 F.4th 784, 791–92 (allegations aren't simply accepted as true but must be assessed as they are likely to be decided upon further evidence and litigation).

Moreover, with regard to the condom catheters and wipes specifically, medical records attached to the defendant's response show Mr. Cobb was evaluated by APN Kimberly Myers on June 6, 2023. She noted his complaints regarding ineffective bowel cleaning, leaking urine, and chronic urinary tract infections. She also noted that his catheter bag contained dark reddish-brown urine and that Mr. Cobb had "catheter tubing

---

[9] He doesn't state what date he read the declaration, but it is dated June 16, 2023. ECF 17-1 at 4.

9

kinked and sticking up through[] the waistband of his pants, creating an obstruction of the tube." ECF 17-2 at 17. In ADL Myers's opinion, the catheter was likely contributing to his medical problems, so she concluded that:

> discontinuing condom catheter is the best alternative at this time and allowing pt to utilize briefs more effectively and allowing for improved hygiene and prevention of skin breakdown. It has also been decided that the patient is able to have moist wipes for hygiene cleansing. I ahve (sic) attempe (sic) to encourage pt to utilize soap and water and use a designated washcloth, however he states this is not effective for his needs. Pt is highly resistant to any addition[al] recommendations for hygiene care, ADLs, as well as discontinuing the condom catheter. Despite his objection, I feel discontinuing the condom catheter is in the patient's best interest in preventing future infections and potentional (sic) further disability.

*Id.* Although it's clear Mr. Cobb disagrees with this plan of action, that disagreement doesn't establish he is currently failing to receive adequate medical care. *See e.g., Lockett*, 937 F.3d at 1024 (disagreement between inmate and doctor or "even between two medical professionals" does not violate the Constitution); *see also Walker*, 940 F.3d at 965 (inmates are "not entitled to demand specific care").

Finally, Mr. Cobb admits he saw a new specialist for a colorectal surgical consult on July 20, 2023. Mr. Cobb indicates the specialist recommended surgery to remove half of his colon, place a colostomy bag, and remove his bladder. According to Mr. Cobb, the specialist stated she "would put in for surgery and she can't fix it, but she can bypass the problem." ECF 22 at 4. He is concerned because no one has talked to him about the surgery or complied with the pre-surgical checklist he was given. However, Mr. Cobb's motion is dated July 24, 2023, only four days after the surgical consult, so—even if the prison's medical professionals agree with the specialist's recommendation—it is not

10

plausible a surgery could have been scheduled in such a short time. As such, Mr. Cobb's second motion hasn't established he is failing to receive constitutionally adequate medical care either, so it must also be denied.

For these reasons, the motions for preliminary injunctive relief (ECF 4 & ECF 22) are DENIED.

SO ORDERED.

August 17, 2023

*s/ Damon R. Leichty*
Judge, United States District Court