UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MALCOM D. COBB, JR.,

Plaintiff,

v.                                         CAUSE NO. 3:23-CV-437-GSL-JEM

WEXFORD HEALTH SERVICES, et al.,

Defendants.

OPINION AND ORDER

Malcom D. Cobb, Jr., a prisoner without a lawyer, is currently housed at the
Miami Correctional Facility. He filed a complaint alleging he is being denied
constitutionally adequate medical treatment. ECF 1. The court previously granted him
leave to proceed against the Warden of the Miami Correctional Facility in an official
capacity to obtain permanent injunctive relief to receive constitutionally adequate
medical care for his urinary, bowel, and blood pressure issues as required by the Eighth
Amendment. ECF 6 at 3. The rest of his claims were taken under advisement for later
screening. *Id*. His request for preliminary injunctive relief was also taken under
consideration at that time. The Warden was ordered to respond "describing/explaining
how Malcom D. Cobb, Jr., is being provided constitutionally adequate medical
treatment for his urinary, bowel, and blood pressure issues." ECF 6 at 4. After
considering the Warden's response—which contained over 175 pages of medical
records—the court denied the motion(s) for preliminary injunction. *See* ECF 24.

Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Cobb alleges from August 21, 2020, to November 15, 2020, he stopped eating which caused pain in his stomach and stool changes. When he stopped defecating, he was taken to the hospital on September 24, 2020, where he remained for a week. While there, tests were performed, and he received treatment to "unconstipate" him. ECF 1 at 3. When he was transferred back to the prison, Health Services Administrator LeeAnn Ivers and N.P. Kim Myers put him in a room with four other inmates who had Covid-19. Cobb subsequently tested positive for Covid-19, and the other inmates passed away. This affected him "mentally," and the pain in his stomach "never went away." *Id.* Nurse Myers misdiagnosed his stomach pain as being from Covid, and nothing further was done about it at that time. On November 20, 2020, he was released from the infirmary.

Between March 23, 2021, and April 27, 2021, Cobb was returned to the infirmary because he wasn't able to eat, had pain in his lower left side, was throwing up, and had trouble urinating. A catheter was placed, but Nurse Myers refused to do anything for the pain and reduced all of his medication in half. His blood pressure remained high.[1] Cobb repeatedly informed Nurse Myers that he was "very sick and in a lot of pain," but she refused to help and told him to, "man up and handle the pain." *Id*. at 5. He was eventually sent to an outside hospital where an infection was discovered.

On April 21, 2021, he spoke with Dr. Merandia—a prison doctor not named as a defendant—who informed him that Dr. Brumfield, an outside gastrointestinal specialist whom Cobb had previously seen, diagnosed him with bowel obstructions which could be remedied with surgery and a colostomy bag. Dr. Brumfield and Dr. Merandia then informed the rest of the medical staff at the prison about the potential surgery. Instead of scheduling the surgery, Nurse Myers took all of his pain medication away and said she didn't believe Dr. Brumfield. On April 27, 2021, Administrator Ivers had Cobb moved out of the infirmary, and he was informed the surgery wouldn't be scheduled because Centurion Health (formally known as Centurion Health of Indiana, LLC), was going to be taking over care at the prison for Wexford Health Service (formally known as Wexford of Indiana, LLC) on July 1, 2021. Cobb attributes this decision to both Administrator Ivers and Wexford Regional Director Dr. Mitchiff. At that time, Cobb

---

[1] Cobb also complains about his broken wheelchair and placement in segregation during the spring of 2021, but those claims were previously raised and dismissed. *See Cobb v. Hyett, et al.*, cause no. 3:20-CV-623-DRL-MGG (filed Jul. 7, 2020; dismissed Jan. 8, 2021); *see also Cobb v. Payne, et al.*, cause no. 3:20-CV-837-MGG (filed Oct. 5, 2020; dismissed Feb. 6, 2023). They cannot be relitigated here.

was in pain and couldn't urinate or have a bowel movement on his own, but Administrator Ivers, Wexford Regional Director Dr. Mitchiff, and Nurse Myers refused to provide him with any treatment and instead told him "good luck" with Centurion. *Id*. at 6.

On August 20, 2021, after Centurion had taken over, Cobb was put back into the infirmary because he had pain in his lower left side, he couldn't have a bowel movement, and his blood pressure was high. Nurse Myers told him he was scheduled for an outside consultation with a gastroenterologist, so she had him perform a bowel preparation which was painful. When he went to the appointment, it was for the "wrong test," and he received a CT scan of his bowels instead which showed no obstruction. *Id*. at 7. Nurse Myers and Administrator Ivers prescribed Ensure nutritional drink to help with the weight he had lost.

On September 21, 2021, he asked Nurse Myers for a test for his urinary tract, and when the results came back they showed a urinary tract infection. Nurse Myers discontinued his blood pressure medication because she said it was causing constipation. This course of treatment differed than that suggested by Dr. Brumfield. Administrator Ivers directed the staff to take Cobb's blood pressure several times when he was being checked and to only record the lower numbers. Cobb believes the records were falsified because only low numbers were recorded even though his blood pressure medication "ha[d] been tripled,"[2] so he began refusing the vital checks. *Id*. at 8.

---

[2] This contradicts his previous statement that his blood pressure medication had been discontinued.

During this time, Nurse Myers refused to change his catheter and refused to give him any cream or pain medication, which caused his penis to split open. She blamed the lack of catheter change on Cobb's own refusal to attend medical examinations, which he denies. Nurse Myers informed him Dr. Kuenzli would be taking over his care.

Cobb told Dr. Kuenzli about the blood in his urine, his split penis, the pain he was experiencing, and the fact that he was coughing up blood, but Dr. Kuenzli didn't provide him with any treatment because he believed Cobb was lying about the pain. Cobb showed two nurses that he had coughed up blood. A few days later he asked Dr. Kuenzli to treat his painful split penis and infections. Dr. Kuenzli prescribed Tylenol 500, but Cobb's medical paperwork indicated he was allergic to it, so Cobb didn't get any pain relief. On September 23, 2021, Dr. Kuenzli sent him to a new gastroenterologist, Dr. Chin, who gave him "some pills." *Id*. at 10. A few days later, Cobb told Dr. Kuenzli, Nurse Myers, and Administrator Ivers that he was going to take things into his own hands and "end it all," but they relied with "whatever." *Id*. at 11.

On December 31, 2021, Cobb attempted to hang himself with a bedsheet. He was cut down and placed into segregation on suicide watch for three days. In that cell, he wasn't allowed to have his wheelchair, so he had to lay on the floor in his own urine. He was seen by a psychiatrist, who told him he was "not crazy or suisidal (sic) I just need medical attention for my illness." *Id*. The psychiatrist wasn't able to help him with his medical care, and he was released from suicide watch. Dr. Kuenzli then prescribed him Tylenol three times a day and referred him to an outside urinary specialist named Dr. Miller.

During that appointment, Dr. Miller told Cobb he was "shocked" his catheter hadn't been changed in eight months, that his penis had been split twice, and that his prostate was swollen and filled with blood clots. *Id.* Dr. Miller recommended scheduling surgery as soon as possible,[3] but Dr. Kuenzli refused to give Cobb pain medication other than Tylenol 3—which he was allergic to—in the meantime. However, Cobb did receive the recommended surgery for his urinary issues shortly thereafter. From January 18, 2022, to January 20, 2022, Cobb remained in the hospital to recover from the surgery.[4]

Cobb claims the surgery wasn't successful because his bladder won't hold urine and he has to wear condom catheters. He alleges Administrator Ivers doesn't order the supplies he needs—including urine pads, condom catheters, urine bags, and wipes—in a timely manner, so he often has to sit in urine and blood for several days. He claims she does this to save Centurion money.

On January 30, 2022, Cobb asked Dr. Kuenzli to help with the pain related to his bladder, rectum, and bowels. Dr. Kuenzli prescribed two Tylenol 3 pills, three times a day. Cobb couldn't take these because he was allergic to it. He told Dr. Kuenzli he was going to attempt suicide, and he tried to hang himself again. Nurse Myers and

---

[3] Dr. Miller indicated the surgery "may or may not help but there's a chance because of extent of damage done." ECF 1 at 12.

[4] Cobb was also sent to see Dr. Chin, the outside gastroenterologist, for a second time, and he recommended surgery for his bowel issues. Instead, Dr. Kuenzli, Nurse Myers, and Administrator Ivers sent him back to Dr. Brumfield, another outside gastroenterologist, who "wondered what happened to [him] because he had told [Cobb he] needed surgery last time." ECF 1 at 12. Cobb mentions Centurion Regional Director Dr. Wilks in this section of his complaint, but he doesn't describe any actions taken by Dr. Wilks. Instead, Cobb simply concludes he violated his rights. *Id.*

6

Administrator Ivers saw this attempt and simply laughed at him. He was "saved" by several correctional officers and Nurse Pom. *Id*. at 14. He was evaluated by a psychiatrist who told him he was "not crazy just want help for pain and not having supplies." *Id*.

Dr. Kuenzli arranged for Cobb to see Dr. Brumfield again, who referred him to a different gastrointestinal specialist, Dr. Catts. After reviewing his medical history, Dr. Catts told Cobb he believed that his rectum and most of his colon could have been "saved" if he had had surgery in 2021, but "now the rectum has quit working," he would lose part of his colon, and he would need a colostomy bag and a urine bag/catheter. *Id*. at 15.

Cobb stopped eating again because peanut butter was making things worse. When he told Administrator Ivers this, she gave him three times the amount of peanut butter. He got a special "lacto ovel diet approved" from Indiana Department of Correction officials, but Administrator Ivers overruled this decision and kept giving him peanut butter. *Id*. He began urinating blood, and Administrator Ivers told him, "You are dying so good luck with that good bey (sic)." *Id*. at 16. Shortly thereafter, Cobb "let them send me to hospital so I could get help." *Id*. When the hospital found out he had to dig stool out of his rectum, they sent him back to the prison infirmary.

Cobb claims he was released from the prison infirmary on May 22, 2023, but he alleges he continues to suffer from a variety of ailments related to his bladder, penis,

urinary tract, intestines, rectum, and bowels.[5] He has sued Wexford Health Services, Centurion Health, Wexford Medical Regional Director Dr. Mitchiff, Centurion Medical Regional Director Dr. Wilks, Health Service Administrator LeeAnn Ivers, Dr. Kuenzli, and N.P. Kim Myers for compensatory and punitive damages. He also seeks injunctive relief in the form of receiving gastrointestinal and urinary surgery, scheduling an appointment with a pain management doctor, and replacing Dr. Kuenzli, Nurse Myers, and Administrator with other "qualified" individuals. *Id*. at 19.

Under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). They are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. Courts must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at

---

[5] He mentions a wheelchair "that broke 'no breaks'" and cut his back, plus a prosthetic he was supposed to receive after his last surgery on his "nub that Wexford refused to do and pay for and a knee replacement that they refused to pay for and now Centurion refuses to pay for." ECF 1 at 17. These allegations too vague to state a claim. *See e.g., Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original). Moreover, as noted above, the allegations regarding the broken wheelchair have already been litigated. *See Cobb v. Hyett, et al.*, cause no. 3:20-CV-623-DRL-MGG (filed Jul. 7, 2020; dismissed Jan. 8, 2021); *see also Cobb v. Payne*, et al., cause no. 3:20-CV-837-MGG (filed Oct. 5, 2020; dismissed Feb. 6, 2023).

965 (citation and quotation marks omitted). However, ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates the plaintiff's condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

Giving Cobb the benefit of the inferences to which he is entitled at this stage, he has sufficiently alleged he has serious medical needs related to his bladder, penis, urinary tract, rectum, bowels, and blood pressure. He has adequately alleged that Administrator Ivers, Dr. Kuenzli, and Nurse Myers have been deliberately indifferent to those needs. Although it is evident he has received evaluation of and treatment for his various problems throughout the years, he claims the aforementioned defendants often purposely denied him pain medication, delayed treatment, and/or failed to provide him with constitutionally adequate care. He will be permitted to proceed further against these defendants on his claims for monetary damages.[6]

As to Wexford Regional Director Dr. Mitchiff and Centurion Regional Director Dr. Wilks, "[t]he personal-involvement requirement of § 1983 can be satisfied if a defendant knew of and consented to a constitutional violation." *Lee v. Carr*, No. 21-1309, 2022 WL 519890, at *1 (7th Cir. Feb. 22, 2022) (citing *Mitchell v. Kallas*, 895 F.3d 492, 498

---

[6] That said, prior to March 23, 2021, Mr. Cobb doesn't state any plausible claims. The fact that he was placed in a room in the infirmary with Covid-19 positive patients sometime in September–November 2020 after returning from the hospital isn't sufficient to suggest any of the defendants committed a constitutional violation, nor is his vague allegation of a subsequent misdiagnosis. *See e.g., Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original).

(7th Cir. 2018)). However, knowledge of the staff is not automatically attributed to an official, "[n]or does § 1983 allow for [their] liability based on what [the] staff did or failed to do." *Id.* (citing *Taylor v. Ways*, 999 F.3d 478, 493–94 (7th Cir. 2021). "With exceptions not relevant here, government officials are liable only for their own misconduct." *Id.* Cobb has alleged Wexford Regional Director Dr. Mitchiff personally knew he had a bowel obstruction in April of 2021 that could be remedied with surgery but refused to allow the surgery to proceed or to provide him with any other treatment solely because Centurion was replacing Wexford as the medical provider. In fact, he claims Dr. Mitchiff told him "good luck" starting over with Centurion. These allegations are sufficient to state an Eighth Amendment claim against Dr. Mitchiff in his individual capacity.

However, Cobb has not plausibly alleged Centurion Regional Director Dr. Wilks knew of or consented to any constitutional violations. He is mentioned only twice in the factual body of the complaint (ECF 1 at 12–13), but Cobb doesn't describe any specific actions taken by Dr. Wilks. Instead, he simply lists Dr. Wilks along with various other defendants and concludes his rights were violated. These sparse allegations are insufficient to state a claim against him. *See Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

Cobb also brings claims against Wexford and Centurion. Both are private companies that contracted with the Indiana Department of Correction to provide medical care to inmates housed at the Miami Correctional Facility.[7] There is no respondeat superior liability under 42 U.S.C. § 1983, and a private company cannot be held liable for damages simply because it employed a medical professional who engaged in wrongdoing. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can be sued under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but only if the "unconstitutional acts of their employees . . . were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). To allege a viable *Monell* policy claim, the plaintiff must identify an official policy that caused him injury. *Grieveson*, 538 F.3d at 771. Alternatively, a plaintiff pursuing an official custom or practice theory "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

---

[7] Wexford's contract with the Indiana Department of Correction ended in July 2021, and it was replaced by Centurion Health. *See Baldwin v. Westville Corr. Facility*, No. 3:21-CV-682-DRL-MGG, 2021 WL 5759136, at *2 (N.D. Ind. Dec. 3, 2021).

As to Wexford, Cobb claims they had a policy or practice in place that prevented him from receiving necessary bowel surgery—or any care at all—from April 27, 2021, until July 1, 2021, because Centurion was scheduled to take over medical care at the prison. As noted by the Seventh Circuit, "administrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions." *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (emphasis in original). However, the Constitution is only violated when those factors are considered "*to the exclusion of reasonable medical judgment* about inmate health." *Id.* (emphasis in original). It can plausibly be inferred from Cobb's complaint that, as the end of its contract with the Indiana Department of Correction approached, Wexford had a policy of considering cost savings to the exclusion of reasonable medical judgment. Thus, Cobb will be permitted to proceed against Wexford of Indiana, LLC.

As to Centurion, he speculates they have a policy of refusing medical care due to their concerns about "money and profit." ECF 1 at 16. The only fact that directly relates to this contention is the assertion that Administrator Ivers "was and is to date saving money for Centurion Medical" by not ordering him medical supplies in a timely manner. *Id.* at 13. However, the actions of one individual delaying the ordering of supplies for one inmate cannot plausibly support a *Monell* claim against Centurion. *See Elyea*, 631 F.3d at 863; *see also Bell Atlantic Corp*, 550 U.S. at 570 (A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."). This is especially true in light of the fact that Cobb's complaint is replete with instances in which he admits he *did* receive medical care after Centurion assumed

responsibility—he was taken for a CT scan of his bowels, was prescribed a nutritional drink, was sent to a new outside gastroenterologist (Dr. Chin) who gave him medication at the first visit, was evaluated by an outside urinary specialist (Dr. Miller) and received surgery for his urinary issues, and was referred to a different gastroenterologist (Dr. Catts) who recommended surgery and a colostomy bag. Thus, it cannot be plausibly inferred that Centurion has a policy that places cost savings and profit above the health of inmates to the exclusion of all other medical judgment. Therefore, Centurion Health will be dismissed.

As noted above, the court previously granted Cobb leave to proceed against the Warden of the Miami Correctional Facility in an official capacity to obtain permanent injunctive relief to receive constitutionally adequate medical care for his urinary, bowel, and blood pressure issues as required by the Eighth Amendment. ECF 6 at 3. For the reasons stated in the original screening order (ECF 6), that claim will remain pending.

However, his requests for preliminary injunctive relief were denied. *See generally* ECF 24. A review of the voluminous medical records the Warden submitted indicate:

> [Cobb] has been seen by outside medical specialists over fifteen (15) times from December 2020 to the present. ECF 17-1 at 1–3. Those appointments included a colonoscopy and several follow-ups, a CT of his abdomen and pelvis, several appointments with a gastroenterologist, a consult with a urologist, a transurethral resection of the prostate (TURP) surgical procedure and several follow-ups, a general surgery consult which resulted in a Sitz marker study being completed at MCF, and the approval of a second colorectal surgery specialist consult which was scheduled for sometime in July 2023. *Id*. Of particular relevance to the instant motion, Nurse Ivers also attests that Mr. Cobb has been seen by medical staff at MCF on a near daily basis from May 6, 2023 to June, 16, 2023, the date the response was docketed, 'unless he refuses, or on rare occasions, the medical staff is not able to locate him.' *Id*. at 3–4; *see also* ECF 17-2 & ECF

17-3 (medical records and list of medications administered). Those
assessments include administering multiple medications for his pain,
urinary, blood pressure, and colorectal issues. *Id.*

*Id.* at 3–4 (footnotes omitted). Cobb didn't directly dispute any of the medical

documents in his response but instead argued generally that Administrator Ivers is the

one who "runs the joint" and "decides on how you live or die." *Id.* at 4 (quoting ECF 18

at 2). He claimed he remained in pain and was not consistently being provided with

supplies, but the court assessed the medical documentation as a whole and concluded

that "[a]lthough it is obvious Mr. Cobb has a variety of serious medical ailments, he

hasn't adequately shown the defendants are currently failing to treat them." *Id.* at 7

(citing *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 792 (7th Cir. 2022)). The court also reviewed a

second motion for preliminary injunctive relief and noted that Cobb admitted he was

taken to a new colorectal surgeon for a surgical consult *after* his first motion had been

filed. *See* ECF 24 at 10 (citing ECF 22 at 3–4). With regard to medical supplies, Cobb

claimed he was being denied condom catheters, wipes, and urine pads, but in a

healthcare request form attached to a separate reply, Cobb admitted he was later

brought his medication and supplies. *See id.* at 9 (citing ECF 19-1 at 3). Moreover,

medical records from Nurse Myers showed that, in her opinion, the condom catheters

were likely contributing to his medical problems, so she discontinued their use and

implemented a hygiene plan instead. The court acknowledged Cobb's disagreement but

concluded it "doesn't establish he is currently failing to receive adequate medical care."

*Id.* at 10 (citing *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (disagreement

between inmate and doctor or "even between two medical professionals" does not

violate the Constitution) and *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (inmates are "not entitled to demand specific care").

Since that time, Cobb has filed a variety of motions associated with this case. Many are titled "updates" and purport to provide the court with additional information about his condition and general confinement. *See* ECF 26 (indicating he was treated in the hospital in late June of 2023, was seen by colorectal surgeon Dr. Floyd in July of 2023, received the recommended surgery from Dr. Floyd on August 26, 2023, and recovered in the hospital and infirmary until he was sent back to the general population against his will in mid-September by Administrator Ivers and Nurse Myers); ECF 29 (stating that "on 8-28-23 I finally got my surgery after 3 years of fighting with medical," noting he was experiencing post-surgery bleeding and was not receiving adequate cleaning supplies from Administrator Ivers or Nurse Myers, and complaining about his lack of "medical idle pay"); ECF 30 (informing the court he was worried about the lack of supplies); ECF 31 (indicating he was transported to Duke's Hospital and later to Fort Wayne Lutheran Hospital on December 13, 2023, where he received surgery and IV antibiotics for five days due to an infection caused by the lack of medical/cleaning supplies, and when he returned to the prison Administrator Ivers, Nurse Myers, and Dr. Kuenzli laughed at Cobb's fears of getting sick again);[8] ECF 32 (Cobb was sent to medical on February 25, 2024, because the guards initially thought he was drunk, but his symptoms were actually due to Nurse Myers' refusal to give him proper blood

---

[8] In a later filed document, Cobb admits he received seven days of antibiotics upon his return to the prison. ECF 31 at 2.

pressure medication or antibiotics for an infection because she said he was scheduled for surgery soon with Dr. Miller);[9] ECF 40 (describing his issues with the grievance process pertaining to the incidents above);[10] ECF 41 (indicating his blood pressure was high due to issues with medication distribution and infection, noting he was seen by the outside urologist, Dr. Miller, on March 26, 2024, who referred him to a bladder surgeon, and indicating he refused a medical follow-up visit with Nurse Myers because she took too long to see him);[11] ECF 42 (duplicate "update" of ECF 41).

It's unclear what relief, if any, Cobb is seeking via these "updates." The court declines to construe them as requests for preliminary injunctive relief because Cobb has not specifically sought such relief and because it's clear Cobb knows how to file such a motion if that is his intention. *See* ECF 4 & ECF 22 (both denied by ECF 24). Moreover, as with his original requests for preliminary injunctive relief, he admits he has been getting ongoing care for a variety of ailments including receiving the colorectal surgery he has been seeking for years, being transported to outside hospitals for emergency treatment, and being evaluated by an outside urology specialist for possible bladder surgery. *See e.g., Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("injunctive

---

[9] Cobb states he was "told by the nurse they were going to change my cath [but] I refused because they are trying to cover up what they haven't done." ECF 32 at 3.

[10] Cobb also describes an incident on March 8, 2024, where he was denied food and treatment by several officers (who are not named as defendants) because he wasn't "dressed in blues pants." ECF 40 at 2. These claims are not sufficiently related to the current case. Unrelated claims belong in different lawsuits. *See e.g. George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

[11] Cobb indicates his left leg and arm weren't working for five days, so he received an x-ray of his leg, hip, ankle on February 6, 2024. To the extent Cobb is claiming injuries to his leg and arm, these claims aren't sufficiently related to the current case. *See George*, 507 F.3d at 607.

relief [i]s an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"); *Univ. of S. Ind.*, 43 F.4th at 791 (in assessing a preliminary injunction, courts do  does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor); *see also Lockett*, 937 F.3d at 1024 (disagreement between inmate and doctor or "even between two medical professionals" does not violate the Constitution); *Walker*, 940 F.3d at 965 (inmates are "not entitled to demand specific care").

Cobb may be attempting to amend his complaint through these motions. A plaintiff may not amend his complaint in a piecemeal fashion because an amended complaint will supersede all earlier pleadings and control the case from that point forward. *French v. Wachovia Bank*, 574 F.3d 830, 835 (7th Cir. 2009); *see also Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture."). The Local Rules of this District also state that an amended pleading must "reproduce the entire pleading as amended," rather than simply incorporating a prior pleading by reference. N.D. Ind. L.R. 15-1. To the extent Cobb is seeking to replace his original complaint with these piecemeal updates, he may not do so. Accordingly, the motions will be denied as unnecessary. However, in the interests of justice, the court has considered the additional relevant facts (set forth above) in the context of the original pleading and will incorporate them into the existing Eighth Amendment claims against Administrator Ivers, Nurse Myers, and Dr. Kuenzli in their individual capacities and the Warden in his official capacity.

That said, Cobb is cautioned that if he intends to amend his complaint in the future, he must do so in accordance with all federal and local rules.

Finally, Cobb has filed two discovery-related motions. *See* ECF 27 (requesting all emails about Cobb's supplies and medical treatment from 2019 to 2023) and ECF 28 (requesting interrogatories from Dr. Brumsfield, Dr. Chin, Dr. Katts, and Dr. Floyd). Because the complaint had not been fully screened at the time Cobb filed these motions—and because not all defendants have yet been ordered to appear and respond to Cobb's claims—these requests will be stricken as premature. Once the defendants have appeared and filed answers, the court will issue a scheduling order which will include discovery deadlines. Cobb may refile his discovery requests at that time.[12]

For these reasons, the court:

(1) GRANTS Malcom D. Cobb, Jr., leave to proceed against the Warden of the Miami Correctional Facility in an official capacity to obtain permanent injunctive relief to receive constitutionally adequate medical care for his urinary, bowel, and blood pressure issues as required by the Eighth Amendment;

(2) GRANTS Malcom D. Cobb, Jr., leave to proceed against Health Service Administrator LeeAnn Ivers, Dr. Kuenzli, and N.P. Kim Myers in their individual capacities for compensatory and punitive damages for failing to provide him with

---

[12] Of note, it is not necessary to file motions to conduct routine, initial discovery requests. To do so, Cobb must simply send discovery requests to the opposing parties (after the scheduling order is issued) and file copies with the clerk as required by N.D. Ind. L.R. 26-2(a)(2)(A); *see also* Fed. R. Civ. P. 33 & 34.

constitutionally adequate medical care for his urinary, bowel, and blood pressure issues

beginning on March 23, 2021, in violation of the Eighth Amendment;

(3) GRANTS Malcom D. Cobb, Jr., leave to proceed against Wexford Regional

Director Dr. Mitchiff in his individual capacity for compensatory and punitive damages

for denying him constitutionally adequate medical care related to his urinary, bowel,

and blood pressure issues from April 27, 2021 through June of 2021, in violation of the

Eighth Amendment;

(4) GRANTS Malcom D. Cobb, Jr., leave to proceed against Wexford of Indiana,

LLC for compensatory and punitive damages for having a policy or practice in place at

the end of its contract with the Indiana Department of Correction of considering cost

savings to the exclusion of reasonable medical judgment that prevented him from

receiving constitutionally adequate medical care for his urinary, bowel, and blood

pressure issues from April of 2021 through June of 2021;

(5) DISMISSES all other claims;

(6) DISMISSES Centurion Health and Centurion Medical Regional Director Dr.

Wilks;

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service

from (and if necessary, the United States Marshals Service to use any lawful means to

locate and serve process on) the Warden of the Miami Correctional Facility at the

Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(8) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service

from (and if necessary, the United States Marshals Service to use any lawful means to

locate and serve process on) Health Service Administrator LeeAnn Ivers, Dr. Kuenzli, and N.P. Kim Myers at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 1);

(9) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Wexford Regional Director Dr. Mitchiff and Wexford of Indiana, LLC at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 1);

(10) ORDERS the Indiana Department of Correction, Wexford of Indiana, LLC, and Centurion Health of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

(11) ORDERS, under 42 U.S.C. § 1997e(g)(2), the Warden of the Miami Correctional Facility, Health Service Administrator LeeAnn Ivers, Dr. Kuenzli, N.P. Kim Myers, Wexford Regional Director Dr. Mitchiff, and Wexford of Indiana, LLC to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order;

(12) STRIKES the discovery motions (ECF 27 & ECF 28) as premature; and

(13) DENIES the motions to update the court (ECFs 26, 29, 30, 31, 32, 40, 41, & 42) as unnecessary.

SO ORDERED on August 22, 2024

/s/Gretchen S. Lund
_____
JUDGE
UNITED STATES DISTRICT COURT