UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MALCOM D. COBB, JR., <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SERVICES, et al., <br><br> Defendants. | CAUSE NO. 3:23-CV-437-GSL-JEM |

OPINION AND ORDER

Malcom D. Cobb, Jr., a prisoner without a lawyer, is currently housed at the Miami Correctional Facility. He filed a complaint alleging he is being denied constitutionally adequate medical treatment. ECF 1. He was granted leave to proceed against the Warden of the Miami Correctional Facility in an official capacity to obtain permanent injunctive relief to receive constitutionally adequate medical care for his ongoing urinary, bowel, and blood pressure issues as required by the Eighth Amendment. ECF 43.[1] Shortly after his complaint was filed, Cobb filed a motion for preliminary injunctive relief related to his medical concerns. ECF 4. The Warden was ordered to respond "describing/explaining how Malcom D. Cobb, Jr., is being provided

---

[1] He was also granted leave to proceed against Health Service Administrator LeeAnn Ivers, Dr. Kuenzli, N.P. Kim Myers, and Wexford Regional Director Dr. Mitchiff in their individual capacities for compensatory and punitive damages for failing to provide him with constitutionally adequate medical care for his urinary, bowel, and blood pressure issues in violation of the Eighth Amendment, as well as against Wexford of Indiana, LLC for compensatory and punitive damages for having a policy or practice in place at the end of its contract with the Indiana Department of Correction of considering cost savings to the exclusion of reasonable medical judgment that prevented him from receiving constitutionally adequate medical care for his urinary, bowel, and blood pressure issues. *See generally* ECF 43.

constitutionally adequate medical treatment for his urinary, bowel, and blood pressure issues." ECF 6 at 4. After considering the Warden's response—which contained over 175 pages of medical records—the court denied the motion(s) for preliminary injunction. *See* ECF 24. A review of the voluminous medical records the Warden submitted indicated:

> [Cobb] has been seen by outside medical specialists over fifteen (15) times from December 2020 to the present. ECF 17-1 at 1–3. Those appointments included a colonoscopy and several follow-ups, a CT of his abdomen and pelvis, several appointments with a gastroenterologist, a consult with a urologist, a transurethral resection of the prostate (TURP) surgical procedure and several follow-ups, a general surgery consult which resulted in a Sitz marker study being completed at MCF, and the approval of a second colorectal surgery specialist consult which was scheduled for sometime in July 2023. *Id*. Of particular relevance to the instant motion, Nurse Ivers also attests that Mr. Cobb has been seen by medical staff at MCF on a near daily basis from May 6, 2023 to June, 16, 2023, the date the response was docketed, 'unless he refuses, or on rare occasions, the medical staff is not able to locate him.' *Id*. at 3–4; *see also* ECF 17-2 & ECF 17-3 (medical records and list of medications administered). Those assessments include administering multiple medications for his pain, urinary, blood pressure, and colorectal issues. *Id*.

*Id*. at 3–4 (footnotes omitted). The court assessed the medical documentation as a whole and concluded that "[a]lthough it is obvious Mr. Cobb has a variety of serious medical ailments, he hasn't adequately shown the defendants are currently failing to treat them." *Id*. at 7 (citing *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 792 (7th Cir. 2022)). Subsequently, Cobb filed numerous other documents that alleged he was being denied certain medications, supplies, and procedures, but he admitted he had been getting ongoing care for a variety of ailments including receiving the colorectal surgery he has been seeking for years, being transported to outside hospitals for emergency treatment,

2

and being evaluated by an outside urology specialist for possible bladder surgery. *See id.* at 8–11; *see also* ECF 43 at 15–17.

Cobb filed another motion dated January 3, 2025,[2] entitled "Plaintiff's Emergency Request for Medical Treatment, As Defendant Parties are Withholding Treatment as Retaliation for Litigation." ECF 85. In it, he claims the defendants have "taken, removed, or withheld previous continuing treatment, and pain medication." *Id.* at 1. He claims he had been on antibiotics and pain medications due to the infections following his surgeries, but defendants Dr. Kuenzli and N.P. Kim Myers told him that officials "downstate" have ordered the removal of all Cobb's medications. *Id*. Specifically, he swears—under penalty of perjury—that he has been "without the pain medications and other medications for forty (40) days now." *Id*. at 2–3. He seeks a court order to return him to the "previous course of medical treatment and medications, including the previous pain medications." *Id*. at 2. The court construed this motion as one for preliminary injunctive relief and ordered the Warden to respond by "explaining whether, over the last forty days, Malcom D. Cobb, Jr., has been (and is currently being) provided with necessary pain medication and antibiotics for his urinary and bowel issues." ECF 87 at 6. The Warden has filed his response as directed. ECF 89. Cobb has failed to file a reply, and the time to do so has passed; therefore, the motion is ripe for adjudication.

---

[2] The motion was dated by Cobb on January 3, 2025, but it was not received by the court until January 8, 2025. *See* ECF 85 (docketing note).

3

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[3] On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be

---

[3] The Seventh Circuit has recognized the first step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

4

awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate or providing him with additional medications—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

In his motion, Cobb claims he has been without any necessary pain medication and antibiotics for forty days.[4] However, the Warden attests that Cobb "is seen by medical staff at Miami Correctional Facility on a daily basis for the administration of his medications, checking on his vitals, and standard medical checkups." ECF 89-10 at 2. Over four-hundred pages of medical records—plus affidavits from Dr. Carl Kuenzli and Health Service Administrator Nurse Lee Ann Ivers—support this assertion. *See generally* ECFs 89-1 through 89-9 & ECFs 90-1 through 90-2.[5] Of relevance, on November

---

[4] His motion is dated January 3, 2025, so forty days before that would have been November 24, 2024.

[5] Cobb's medical chart demonstrates he received multiple medications throughout December and January, but it also shows he refused medications and medical care during that same period. *See* ECF 89 at 4–5 (summarizing distributions and refusals); *see also generally* ECFs 89-1 through 89-9.

5

26, 2024—near the start of the alleged deprivation—medical records from infirmary provider rounds indicate Cobb was receiving multiple pain medications including acetaminophen with codeine, meloxicam, diclofenac topical gel, and oxcarbazepine. ECF 89-1 at 18–20. On December 30, 2024—just days before Cobb filed his motion—he was assessed by Dr. Carl E. Kuenzli during a chronic care visit. ECF 89-5 at 45–49. Acetaminophen, meloxicam, diclofenac topical gel, and oxcarbazepine were listed among his current pain medications. *Id.* at 46–47. Dr. Kuenzli also added linezolid, meropenem, and sulfamethoxazole—medications used to treat infections—to the list as of that date. *Id.* at 48–49. Dr. Kuenzli's affidavit provides further details about the pain medication issue:

> In my role as physician at MCF, I have regularly assessed and treated Mr. Cobb for numerous medical ailments, including during the time period from November 24, 2024, to present day. Mr. Cobb was not approved for a monthly renewal of Tylenol with codeine #3 and was given an alternate treatment plan. He was decreased from 3 tablets twice daily to receive 1 tablet twice daily until gone, with a stop date of December 17, 2024, and then use Tylenol 500mg 2 tablets every 6 hours as needed, instead. No other medications were discontinued or changed for Mr. Cobb. Specifically, Mr. Cobb remains on medications for pain relief: meloxicam and oxcarbazepine. Mr. Cobb has continued to complain of blader pain and is scheduled for a urinary diversion procedure later in the month.

ECF 90-1 at 1–2 (numbered paragraphs omitted).[6]

Under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). However,

---

[6] The affidavit of Nurse Ivers notes that she, personally, was not involved in the decision to titrate Cobb off acetaminophen with codeine, but she reviewed his chart which indicates he remains on the pain medications noted above. ECF 90-2 at 1.

they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Nevertheless, "mere disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Instead, the court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted).

Additionally, it is not enough that a medical professional be mistaken in his or her judgment, as "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). To prevail, the inmate must show deliberate indifference, which is "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722. Put another way, the plaintiff must show that a medical provider's treatment decisions were "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Based on the record before the court, Cobb has not made a clear showing that he is entitled to a preliminary injunction. At issue is whether he is *currently* receiving constitutionally inadequate medical care such that he will be irreparably harmed if not granted injunctive relief while this case is pending. Although it's obvious Mr. Cobb has a variety of serious medical ailments, he hasn't adequately shown the defendants are currently failing to treat them or are refusing to provide him with necessary medication. *See Univ. of S. Ind.*, 43 F.4th at 792 (when ruling on a motion for preliminary injunction, the court must assess the merits as "they are likely to be decided after more complete discovery and litigation"). In fact, evidence submitted by the Warden demonstrates Cobb is receiving consistent care including distribution of pain medication and antibiotics, and Cobb hasn't disputed any of those medical records or affidavits via reply. To the extent he disagrees with Dr. Kuenzli's discontinuation of Tylenol with codeine, that isn't enough to warrant granting preliminary injunctive relief. *See Walker*, 940 F.3d at 965 (inmates are "not entitled to demand specific care" and the court must generally defer to medical professionals unless evidence shows blatant incompetence); *Lockett*, 937 F.3d at 1024 ("We routinely have rejected claims, however, where a prisoner's claim is based on a preference for one medication over another unless there is evidence of a *substantial* departure from acceptable professional judgment.") (emphasis in original)); *see also Univ. of S. Ind.*, 43 F.4th at 791 (plaintiff cannot be given the benefit of unsupported inferences at this stage).

For these reasons, the court DENIES the motion for preliminary injunctive relief (ECF 85).

SO ORDERED on February 27, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT